UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

In re

Bridge Construction Services of       12 Civ. 3536 (JGK)
Florida, Inc., Hughes Bros, Inc.,     12 Civ. 6285 (JGK)
and Tutor Perini.,                    13 Civ. 3123 (JGK)

Petitioners.                          OPINION AND ORDER

————————————————————————

JOHN G. KOELTL, District Judge:

        In December 2010, while working on a project to repair the
Tappan Zee Bridge, Jose Ayala fell off a barge named the "Hughes
660" into the Hudson River.  Ayala, injured by the fall,
contends that he lost his footing when the barge was jolted by a
tugboat named the "Bruce Russell."  Ayala and his wife brought a
suit for negligence and violation of the New York Labor Law in
the New York State Supreme Court against: Bridge Construction
Services of Florida, Inc. ("Bridge"), which was the purported
owner and/or bareboat charterer of the Bruce Russell; Tutor
Perini Corporation ("Tutor Perini"), which was Ayala's employer
and the general contractor for the bridge repair project; Hughes
Brothers, Inc. ("Hughes"), the owner of the Hughes 660; and Tri-
State Electric Contracting, Inc. ("Tri-State"), a contractor
that worked on the bridge.  The Ayalas also asserted claims
against Tutor Perini for negligence under general maritime law
and the Merchant Marine Act of 1920, also known as the Jones

Act, 46 U.S.C. § 20104 et seq.  See generally In re Bridge
Const. Servs. of Fla., Inc., 39 F. Supp. 3d 373, 378-80
(S.D.N.Y. 2014) ("Bridge").

In 2014, the petitioners---Bridge, Hughes, and Tutor
Perini---filed separate petitions in this Court seeking
exoneration or limitation of liability in connection with the
incident under the Limitation of Liability Act, 46 U.S.C.
§ 30501 et seq.

The parties also assert various indemnity claims, which
they clarified at a hearing before the Court.  Bridge seeks both
common law indemnification and contractual indemnification
against Tutor Perini based on a Subcontract Agreement between
Bridge and Tutor Perini, which allegedly provides coverage for
liability and the costs of defense.  Bridge also seeks common
law indemnity, but not contractual indemnity, for both liability
and the costs of defense against Hughes.  And Tutor Perini seeks
contractual indemnity against Bridge for liability and the costs
of defense based on the Subcontract Agreement. See generally
Sept. 30, 2015 Tr. at 7-13.

This Court has subject matter jurisdiction under 28 U.S.C.
§ 1333(1) and 46 U.S.C. § 30511(a) over the exoneration and
limitation of liability claims. The Court has supplemental
jurisdiction under 28 U.S.C. § 1367(a) over any state law claims
asserted in this action.

In a prior opinion, the Court denied motions for summary judgment seeking exoneration from all liability or limitation of liability brought by Bridge,[1] Hughes, and Tutor Perini.  See Bridge, 39 F. Supp. 3d at 384, 388, 394, 395-96.  The Court also denied Tutor Perini's motion for summary judgment seeking contractual indemnification from Bridge.  See id. at 395.[2]

After the Court's 2014 opinion, the Ayalas reached a settlement with Hughes, Tri-State, and Tutor Perini.  See Decl. of Daniel G. McDermott, ECF No. 127, Ex. 3 at 4-5, Ex. 4, at 1-3.  The remaining parties were directed to make motions for summary judgment, indicating which claims remain, and---separately---whether the issues require a jury trial.  See Or., Mar. 23, 2015, ECF No. 122, at 1.

Before the Court now are three motions for summary judgment brought, respectively, by Bridge, Tutor Perini, and Jose Ayala, and supplemental briefing on the jury question.[3]  Familiarity

---

[1] Bridge sought summary judgment only on its claim for exoneration and not on a claim for limitation of liability.
[2] A claim brought by Ayala's wife for loss of consortium was abandoned, and Bridge's motion for summary judgment, to the extent that it involved that claim, was thus granted.  See Bridge, 39 F. Supp. 3d at 384.  The Court also dismissed without prejudice a claim the Ayalas brought against Tri-State under the New York Labor Law and denied without prejudice as moot Tri-State's motion for summary judgment on the same claim.  See id. at 395.  Mrs. Ayala is no longer a plaintiff in this suit.  See Sept. 30, 2015 Tr. at 20.
[3] Neither Hughes nor Tri-State filed summary judgment motions pursuant to the Court's March 23, 2015 order.

with the undisputed facts set forth in the previous opinion is assumed.  See Bridge, 39 F. Supp. 3d at 379-80.

## I.

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## II.

The Court addresses in turn each summary judgment motion and the jury question.

### a. Bridge

Bridge argues that because Ayala settled his claim against Tutor Perini and executed a release, his claims against Bridge are precluded by the principle of res judicata, or claim preclusion.  Bridge also argues that Ayala's state court action only sought to recover damages against Bridge for its vicarious liability as a subcontractor to Tutor Perini.  And, because, under Soto v. U.S. Lines, Inc., 608 F. Supp. 904 (S.D.N.Y. 1985), a plaintiff is barred from pursuing a claim for vicarious liability after the plaintiff settles with the underlying tortfeasor for the same negligence (and vice versa), Ayala's

5

claims against Bridge are barred.   Ayala counters that he
brought claims of direct negligence against Bridge that are not
barred by res judicata.

Bridge misapprehends Ayala's claims.   While Ayala's
complaint seeks to plead the ways in which all of the parties
could be liable for his injury---and some of those theories
include the vicarious liability of Bridge for the acts or
omissions of Tutor Perini---Ayala clearly brought claims of
direct negligence by Bridge.   See, e.g., Decl. of Daniel G.
McDermott, Ex. 2, ECF No. 61-1, Verified Compl., Index No.
151640/2012, ¶¶ 27, 44-46, 48. In particular, Ayala argues that
the captain of the Bruce Russell, Kenny Kling, was not licensed
to operate a tugboat even though he was required to have such a
license and that Bridge's owner, Bruce Sweet, knew as much but
allowed Kling to pilot the ship without a license because Sweet
could not find anyone else to do the job.   See Bridge, 39 F.
Supp. 3d at 379.   Ayala argues that Bridge is, thus, liable for
negligence per se for violating 46 C.F.R. § 15.605.[4]

Claims of Bridge's direct negligence have not been settled.
As the Court held in its previous decision, there is "an issue
of fact about whether Kling, an unlicensed captain, exercised

---

[4] Section 15.605 requires that "[e]ach uninspected passenger
vessel (UPV) must be under the direction and control of an
individual credentialed by the Coast Guard."   46 C.F.R.
§ 15.605.

'ordinary care, caution and maritime skill.'" Bridge, 39 F.
Supp. 3d at 383 (quoting The Jumna, 149 F. 171, 173 (2d Cir.
1906)). These claims were specifically excepted in the release
the Ayalas signed releasing their claims against Tutor Perini
and Hughes. The release states:

> This RELEASE is in no way intended to affect any
> claims or cross-claims that RELEASEES [Tutor Perini
> and Hughes] maintain against Bridge Construction
> Services of Florida, Inc., in the associated pending
> actions in the Southern District of New York and in
> the Supreme Court of the State of New York, County of
> New York.

> Any and all claims and cross-claims by the
> RELEASORS [the Ayalas] and/or the RELEASEES, against
> Defendant, Bridge Construction Services of Florida,
> Inc., survive this RELEASE and will not be affected in
> any way by any language, terms or provisos contained
> herein.

Decl. of Dario Anthony Chinigo, Esq., Ex. 3, ECF No. 136-3,
Release, Jan. 22, 2015, at 3.[5]

While Bridge can no longer be vicariously liable for Tutor
Perini's negligence, see Soto, 608 F. Supp. at 906, Bridge
remains potentially liable for its own alleged negligence. Res
judicata is designed to protect "litigants from the burden of

---

[5] Magistrate Judge Maas made it clear on the record at the
conference that settled the Ayalas' claims against Tutor Perini,
Hughes, and Tri-State that Jose Ayala's claims against Bridge
remained. The court stated: "And just so the record is clear . .
. the claims of the plaintiff [Ayala] against Bridge
Construction Services are not being settled nor is the cross-
claim brought by Tutor Perini against Bridge." Decl. of Daniel
G. McDermott, Ex. 3, ECF No. 127-3, Settlement Tr., Oct. 9,
2014, at 5.

relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1977); see also Hennessy v. Cement & Concrete Worker's Union Local 18A of Laborer's Int'l Union of N. Am., AFL-CIO, 963 F. Supp. 334, 337 (S.D.N.Y. 1997). But that doctrine has no relevance where, as here, the issue---in this case, Bridge's negligence---was not resolved and, indeed, specifically reserved. Thus, Bridge's motion for summary judgment dismissing Ayala's direct negligence claim is **denied**.

Bridge also argues that the indemnity claims of Tutor Perini, Hughes, and Tri-State should be dismissed.

The Subcontract Agreement, to which Tutor Perini and Bridge are parties, provides that it is governed by and should be construed under New York law. See Dec. of Daniel G. McDermott, Ex. 8, ECF No. 61-8, at 12, 24 ("Subcontract Agreement"). Under New York law, "[t]he right to contractual indemnification depends upon the specific language of the contract. In the absence of a legal duty to indemnify, a contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Alfaro v. 65 W. 13th Acquisition, LLC, 904 N.Y.S.2d 205, 207 (App. Div. 2010) (citations omitted); see also Heimbach v. Metro. Transp. Auth., 553 N.E.2d 242, 246 (N.Y. 1990)

(contractual language has to evince an "unmistakable intention" to indemnify before a court enforces such an obligation).  Here, Section 11.1 of the Subcontract Agreement provides:

> 11.1  To the fullest extent permitted by law, Subcontractor [Bridge] shall indemnify, defend, and hold harmless Contractor [Tutor Perini] . . . from and against all liability, claims, damages, losses, costs, fines and expenses, (including attorney's fees and disbursements) caused by, arising out of or resulting from the performance of the Work or the acts or omissions of the Subcontractor, its sub-subcontractors or anyone directly or indirectly employed by the Subcontractor or any of its sub-subcontractors or for whose acts the Subcontractor or any of its sub-subcontractors may be liable; provided that any such liability, claim, damage, loss, cost, or expense is caused, in whole or in part, by the negligent act or omission of the Subcontractor, its sub-subcontractors or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable when the loss, injury or damages arises out of, relates to, is connected to, or results from the Subcontractor's work.  This required Subcontractor indemnity specifically does not include indemnification for the Contractor's own negligence, except to the extent permitted by law.  Such obligation shall not be construed to negate or otherwise reduce any other right or obligation or indemnity, which would otherwise exist.

Subcontract Agreement at 20.

Bridge argues that, if the only claims that remain are the independent claims of liability for Bridge's negligence, these claims are not covered by Bridge's contractual indemnification of Tutor Perini.

This argument is plainly incorrect.  According to the Subcontract Agreement, Bridge agreed to "indemnify, defend and

9

hold harmless" Tutor Perini where a "liability, claim, damage, loss, cost, or expense" was "caused, in whole or in part, by the *negligent* act or omission" of Bridge or others for whom Bridge was responsible.  See Subcontract Agreement at 20 (§ 11.1) (emphasis added).

It is true that Bridge has not agreed to indemnify Tutor Perini for Tutor Perini's own negligence.  The Subcontract Agreement specifically excludes such coverage.  But the indemnification clause in the Subcontract Agreement at issue here *does* require Bridge to indemnify Tutor Perini for any liability arising from Bridge's negligence---and those are the acts that remain in dispute.  See Laneuville v. Gen. Motors Corp., 93 F. Supp. 2d 272, 276 (N.D.N.Y. 2000) (interpreting New York contact law to deny summary judgment where factual issues regarding subcontractor's negligence remained).  Whether this contractual right of indemnification will in fact be triggered cannot be resolved on this motion for summary judgment because it depends on disputed issues of fact concerning whether Bridge was negligent and whether that negligence was a proximate cause of the accident.  See Edwards v. Int'l Bus. Machs., Corp., 571 N.Y.S.2d 155, 157 (App. Div. 1991) (interpreting similarly worded indemnification provision); see also McLean v. 405 Webster Ave. Assocs., 951 N.Y.S.2d 185, 189-90 (App. Div. 2012) (judgment denying summary judgment on contractual

10

indemnification was proper where question of fact as to subcontractor's negligence remained); <u>Cichon v. Brista Estates Assocs.</u>, 597 N.Y.S.2d 819, 821 (App. Div. 1993) (same). Accordingly, Bridge's motion for summary judgment dismissing Tutor Perini's claim for contractual indemnification is **denied**.

At the argument on the current motions, Bridge said that it seeks both common law indemnification and contractual indemnification against Tutor Perini based on the Subcontract Agreement for both liability and the costs of defense.  <u>See</u> Sept. 30, 2015 Tr. at 7-8.  Bridge also said it seeks common law indemnity, but not contractual indemnity, for both liability and the costs of defense against Hughes.  <u>Id.</u> at 8.  Bridge did not advance arguments for summary judgment on those claims in its papers, and neither Tutor Perini nor Hughes had any opportunity to respond to such arguments.  Accordingly, those claims are not before the Court on the current motions, although it is difficult to see where Bridge finds a contractual obligation for Tutor Perini to indemnify Bridge in a clause that provides for Bridge to indemnify Tutor Perini.  <u>See</u> <u>Hammond v. Toy Indus. Ass'n, Inc.</u>, 8 F. Supp. 3d 484, 499 (S.D.N.Y. 2014) (refusing to consider arguments not raised in motion for summary judgment where opposing party had no opportunity to respond); <u>Velez v. Reynolds</u>, 325 F. Supp. 2d 293, 317 (S.D.N.Y. 2004) (same).

Finally, in its responses to Tutor Perini's Motion for Summary Judgment and to Jose Ayala's Motion for Summary Judgment, Bridge argues that both Tutor Perini and Ayala are subject to sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Rule 11 provides that in signing a pleading or motion, an attorney represents to the Court that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," Fed. R. Civ. P. 11(b)(1), and that "the claims . . . are warranted by existing law or by a nonfrivolous argument for the extension . . . of existing law." Id. 11(b)(2). "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Id. 11(c)(2). "Rule 11 sanctions are judged under an objective reasonableness standard and are appropriate only when it is patently clear that a pleading has no chance of success." Shuster v. Oppleman, No. 96cv1689 (JGK), 1999 WL 9845, at *6 (S.D.N.Y. Jan. 11, 1999) (citing, inter alia, Lapidus v. Vann, 112 F.3d 91, 96 & n6 (2d Cir. 1997)).

Bridge's arguments fail for two reasons. First, in both opposition memoranda, Bridge "failed to comply with the requirements for making a [separate] Rule 11 motion." Karla Otto, Inc. v. Rivoli Creation, S.A.S., No. 13cv0483 (JGK), 2014

WL 6910546, at *1 (S.D.N.Y. Dec. 5, 2014).  Second, even if it
had, "it cannot be said" that either Tutor Perini's or Ayala's
arguments "were wholly without merit or that they had no chance
of success."  Sibersky v. Borah, Goldstein, Altschuler &
Schwartz, P.C., No. 99cv3227 (JGK), 2000 WL 1448635, at *9
(S.D.N.Y. Sept. 28, 2000); see also Hennessy, 963 F. Supp. at
339.  Accordingly, Bridge's motions for sanctions under Rule 11
against both Tutor Perini and Jose Ayala are **denied**.

**b. Tutor Perini**

Tutor Perini advances two arguments in support of summary
judgment.  First, it argues that summary judgment should be
granted dismissing Bridge's cross-claim for indemnification
against Tutor Perini.  Tutor Perini argues that Bridge has
waived or withdrawn its cross-claim for indemnification because
Bridge failed to make an affirmative claim for indemnity against
Tutor Perini before the Court in a previous hearing or in its
summary judgment papers.  Second, it seeks summary judgment in
its favor for indemnification and defense costs, including
attorneys' fees, against Bridge pursuant to the Subcontract
Agreement.  Tutor Perini does not claim it is entitled to common
law indemnity for liability or the costs of defense.  See Sept.
30, 2015 Tr. at 16.

On the question of waiver and withdrawal, Tutor Perini
cites a hearing before this Court and before the Magistrate

13

Judge where Bridge made no mention of its alleged cross-claim for indemnity against Tutor Perini.  Bridge argues in opposition that it did not waive or withdraw its claim and simply did not move for summary judgment on it because it recognized that there were issues of fact that would preclude the Court from granting summary judgment in favor of Bridge.

Tutor Perini's waiver argument fails.  A party does not relinquish a claim simply because it does not seek summary judgment on it, and at no point in its papers or during oral argument did Bridge affirmatively withdraw its cross-claim.  Accordingly, Tutor Perini's argument that Bridge waived or withdrew its cross-claim for indemnity is **denied**.

Second, Tutor Perini moves for summary judgment on its claim for contractual indemnification for defense costs against Bridge.  It argues that while the Court previously denied summary judgment on Tutor Perini's indemnification claim under Section 11.1 of the Subcontract Agreement because "factual issues exist as to the negligence of both Bridge and Tutor Perini," Bridge, 39 F. Supp. 3d at 394-95, that holding did not address Tutor Perini's claims for defense costs under a different section in the Subcontract, Section 11.3.  Tutor Perini argues that the "unambiguous language" of Section 11.3 entitles it to indemnification from Bridge for defense costs, and the existence of triable issues of fact as to the negligence

of Bridge and Tutor Perini has no impact upon Bridge's duty to reimburse Tutor Perini for all of its defense costs, including attorneys' fees.   Tutor Perini argues that the mere commencement of this litigation against Tutor Perini triggered Bridge's duty to defend Tutor Perini.

Bridge argues in opposition that Tutor Perini's claim for defense costs was decided by the previous opinion either explicitly when the Court denied summary judgment on the Section 11.1 claim, or by implication when it held that the parties' remaining arguments not specifically addressed were either moot or without merit. See Bridge, 39 F. Supp. 3d at 395. Accordingly, Bridge argues, law of the case principles foreclose Tutor Perini's claim.   On the merits, Bridge argues, without citation to case law, that in order to be liable for defense costs, Tutor Perini must prove that the defense costs were incurred as a result of acts or omissions of Bridge.

As an initial matter, the previous opinion decided the indemnity question only as it related to Section 11.1.   The Court only quoted from Section 11.1 and only addressed Tutor Perini's contractual claim for indemnification for liability and did not discuss the issue of indemnification for the costs of defense.   See Bridge, 39 F. Supp. 3d at 394-95.   Whether Section 11.3 obligates Bridge to indemnify Tutor Perini for the costs Tutor Perini has incurred defending the lawsuit remains an open

15

question.  "Under the 'law of the case' doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Wash. Nat. Life Ins. Co. of N.Y. v. Morgan Stanley & Co. Inc., 974 F. Supp. 214, 218 (S.D.N.Y. 1997) (internal quotation marks and citation omitted).  But this discretionary doctrine "applies only to issues actually previously litigated."  Yaba v. Roosevelt, 961 F. Supp. 611, 623 (S.D.N.Y. 1997).  Here, "the issue decided on the prior motion"---whether Section 11.1 imposed a duty on Bridge to indemnify Tutor Perini for Bridge's negligent conduct---"is different from the issue on this motion"---whether Section 11.3 imposes a duty on Bridge to indemnify Tutor Perini for defense costs regardless of Bridge's negligence.  See Lone Wolf McQuade Assocs. v. CBS Inc., 961 F. Supp. 587, 597 (S.D.N.Y. 1997).  "Accordingly, the 'law of the case' does not bar the Court's decision on this motion."  Id.

The analysis of the merits begins with the text of Section 11.3 of the Subcontract Agreement:

> 11.3  The  Subcontractor  [Bridge]  agrees  that  its obligation  to  defend,  indemnify  and  hold  harmless Contractor  [Tutor  Perini]  and  other  indemnitee(s) pursuant  to  the  provisions  of  this  Subcontract commences  when  a  claim  is  made  even  if  the Subcontractor  disputes  its  obligation  to  defend, indemnify and hold harmless.  Should the Subcontractor fail  to  promptly  assume  its  duty  to  defend  such  a claim,  the  Contractor  or  the  indemnitee(s),  at  its sole  option,  may  provide  for  that  defense  through counsel  of  its  own  choosing,  at  Subcontractor's  sole

expense.   Subcontractor  agrees  to  pay  all  defense
costs  so  incurred  by  the  Contractor  or  other
indemnitee(s) upon demand.

Subcontract Agreement at 20.[6]

     As stated above, the Subcontract Agreement is governed
under New York law, and it is strictly construed.   See id.;
Alfaro, 904 N.Y.S.2d at 207.[7]  "In determining the obligations of
parties to a contract, courts will first look to the express
contract language used to give effect to the intention of the
parties, and where the language of a contract is clear and
unambiguous, the court will construe and discern that intent
from the document itself as a matter of law."  Hawkins Home

---

[6] The term "claim" is not defined in this context in the
Subcontract Agreement, but it is generally understood as "[a]
demand for money, property, or a legal remedy to which one
asserts a right" or "[a]n interest or remedy recognized at law,"
similar to a cause of action.   See "claim," Black's Law
Dictionary (10th ed. 2014).

[7] The Subcontract Agreement is a contract, not an insurance
policy, and that distinction is relevant to the Court's analysis
of Bridge's duty to defend.  As Judge Failla recently explained,
under New York law, "'[i]t is well settled that an insurance
company's duty to defend is broader than its duty to
indemnify.'" Dresser-Rand Co. v. Ingersoll Rand Co., No.
14cv7222 (KPF), 2015 WL 4254033, at *6 (S.D.N.Y. July 14, 2015)
(quoting Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137
(App. Div. 2006)).  But outside of the insurance context,
indemnity provisions "'must be strictly construed to avoid
inferring duties that the parties did not intend to create.'"
Id. at *7 (quoting Bank of N.Y. Tr. Co. v. Franklin Advisers,
Inc., 726 F.3d 269, 283-84 (2d Cir. 2013)).   Nevertheless,
"[i]f a contractual defense obligation is, by its own terms,
exceedingly broad, a court will not artificially circumscribe it
simply because the indemnitor is not an insurer."   Id.

Grps. Inc. v. S. Energy Homes Inc., 714 N.Y.S.2d 539, 540 (App.
Div. 2000) (internal quotation marks and citation omitted).
Here, the plain text of Section 11.3 unambiguously establishes a
duty to defend that does not turn on whether Bridge was actually
negligent.  Section 11.3 does not predicate Bridge's duty to
defend on Bridge's negligence or even mention the determination
of fault as a pertinent consideration.  A fair reading of
Section 11.3 makes it plain that Bridge's duty to defend
commences when a claim is made against Tutor Perini arising out
of the acts or omissions of Bridge, "even if [Bridge] disputes
its obligation to defend, indemnify and hold harmless."
Subcontract Agreement at 20 (§ 11.3).  See Bermejo v. N.Y. City
Health & Hosps. Corp., 989 N.Y.S.2d 490, 494 (App. Div. 2014)
(holding there was a duty to defend where the indemnification
clause did not, by its terms, limit indemnification only to
claims arising out of negligence); McCleary v. City of Glens
Falls, 819 N.Y.S.2d 607, 609 (App. Div. 2006) ("Nothing in the
broad language of the . . . agreement conditions [the third-
party's] duty to defend . . . on a predicate finding of
fault."); see also Sand v. City of N.Y., 921 N.Y.S.2d 312, 315
(App. Div. 2011); Di Perna v. Am. Broad. Companies, Inc., 612
N.Y.S.2d 564, 567 (App. Div. 1994).

     Indeed, the structure of § 11.3 makes clear that Bridge's
obligation to defend Tutor Perini commences when a claim is made

against Tutor Perini, even if Bridge disputes its obligation to defend or indemnify Tutor Perini for that claim.  If Bridge fails to defend Tutor Perini, Tutor Perini may defend the claim, but Bridge agrees to pay all defense costs.  The obligation to pay the defense costs does not depend on an ultimate finding of fault by Bridge, and the decision whether to provide a defense is necessarily made before any finding of fault has been made.

Accordingly, Tutor Perini's motion for summary judgment granting its claim that Bridge indemnify it for defense costs, including attorneys' fees, incurred as a result of the incident at issue is **granted**.

### c. Jose Ayala

Jose Ayala renews his motion for summary judgment either to grant his claims against Bridge or to shift the burden of proof to Bridge under the "Pennsylvania Rule" because Captain Kling was unlicensed.  The Pennsylvania Rule was established by the Supreme Court in The Pennsylvania, 86 U.S. 125 (1874).  In that case, the Supreme Court held:

> [W]hen . . . a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.

Id. at 136.

The Pennsylvania Rule, "in other words, shifts to defendants the burden of disproving causation." Dover Barge Co. v. Tug Crow, 642 F. Supp. 2d 266, 274 (S.D.N.Y. 2009). It originally "applied only to cases involving collisions between ships, but has been extended to apply to any statutory violator who is a party to a maritime accident." Id. Ayala argues that it is applicable here because the evidence is allegedly undisputed that, in violation of 46 C.F.R. § 15.605, the operator of the tug Bruce Russell was not licensed to operate it.

Ayala's argument is at best premature. As established by the previous opinion, issues of fact remain as to how the accident occurred, the relevance of whether the tug captain was licensed, and the negligence (or lack thereof) of Bridge or the other petitioners. See Bridge, 39 F. Supp. 3d at 395. These factual disputes preclude summary judgment, and the Pennsylvania Rule, which addresses burden shifting, is not determinative of the ultimate finding of negligence. See Dover Barge, 642 F. Supp. 2d at 275 (denying motion for summary judgment "because whether the Pennsylvania Rule applies turns on the jury's findings"). Issues with respect to the burden of proof are best

addressed at trial.  Accordingly, Ayala's motion for
summary judgment is **denied**.

### d. Jury Trial

The Court asked the parties to brief the question of what
issues, if any, should be tried before a jury.  Both Bridge and
Tutor Perini consent to trying the indemnification claims
without a jury; therefore, those issues will be tried to the
Court alone.  <u>See</u> Fed. R. Civ. P. 39(a).  Bridge and Tutor
Perini oppose a jury trial on any other claim.  Bridge argues
that the Court should decide its liability, if any, in a
proceeding called a "concursus," where the Court, sitting in
admiralty without a jury, would determine "whether there was
negligence; if there was negligence, whether it was without the
privity and knowledge of the owner; and if limitation is
granted, how the fund should be distributed." <u>Universal Towing</u>
<u>Co. v. Barrale</u>, 595 F.2d 414, 417 (8th Cir. 1979).  Ayala
concedes that the issues of exoneration and limitation of
liability with respect to Bridge should be tried before the
Court.  He seeks a jury trial on the issues of Bridge's
liability for his injures and the amount of his damages.  <u>See</u>
Sept. 30, 2015 Tr. at 21-22.  Ayala argues that he and his wife
commenced the case in New York State court and that 28 U.S.C.
§ 1333(1), the so-called "saving to suitors clause," preserves
their right to a jury trial.

Once a complaint seeking limitation or exoneration is properly filed, the district court "shall enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Supp. Admiralty & Mar. Claims, Rule F(3), Fed. R. Civ. P.

As this Court explained in its previous opinion, a federal district court conducts a liability limitation proceeding sitting in admiralty without a jury in a concursus. See Bridge, 39 F. Supp. 3d at 381-82. In such a proceeding, the Court follows a two-step process whereby it, first, determines what, if any, "acts of negligence or unseaworthiness caused the casualty." In re Moran Towing Corp., 984 F. Supp. 2d 150, 180 (S.D.N.Y. 2013), amended, 996 F. Supp. 2d 221 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); see also In re Messina, 574 F.3d 119, 126 (2d Cir. 2009). Second, if the court finds that acts of negligence or unseaworthiness caused the casualty, the court must determine "whether the shipowner had knowledge or privity of these acts." Moran Towing, 984 F. Supp. 2d at 180 (internal citations omitted). "If the court finds no privity or knowledge, limitation is granted, and the court must determine how the limitation fund should be allocated. If limitation is denied, the district court may dissolve the injunction against other proceedings, thus permitting claimants

22

to pursue their claims outside the limitation proceeding."
Complaint of Poling Transp. Corp., 776 F. Supp. 779, 782
(S.D.N.Y. 1991) (citations omitted).

The Limitation of Liability Act "is directed at misfortunes
at sea where the losses incurred exceed the value of the vessel
and the pending freight." Complaint of Dammers & Vanderheide &
Scheepvaart Maats Christina B.V., 836 F.2d 750, 754-55 (2d Cir.
1988) (internal quotation marks and citation omitted). The
concursus and stay of related proceedings seek to "achieve the
primary purpose of the Act---'to provide a marshalling of assets
[and] the distribution pro rata of an inadequate fund among
claimants, none of whom can be paid in full.'" Id. at 755
(quoting In re Moran Transp. Corp., 185 F.2d 386, 389 (2d Cir.
1950)) (alteration in original).

The question of whether a jury should be convened in
admiralty cases raises a "recurring and inherent conflict in
admiralty law." Dammers, 836 F.2d at 754. On one hand,
"[b]ecause there is no right to a jury trial in actions
instituted in admiralty, and because the claimants are enjoined
from proceeding in other forums once a limitation proceeding is
commenced, this procedure necessarily denies claimants their
right to pursue common law claims before a jury." Poling, 776
F. Supp. at 782 (internal citations omitted). But, on the other
hand, Section 1333's "saving to suitors clause" provides that

the exercise of admiralty jurisdiction will not deny suitors the right to common law remedies "to which they are otherwise entitled."  28 U.S.C. § 1333(1).  One of these remedies is a jury trial.

To help resolve this conflict, courts recognize two exceptional circumstances in which a concursus is not necessary. "First, if the value of the vessel and her cargo (i.e., the limitation fund) exceeds the value of all claims against it, no concursus is necessary and the claimants may proceed in other forums."  Poling, 776 F. Supp. at 783; see also Dammers, 836 F.2d at 755.  Second, if there is a single, or lone, claimant who seeks to "to recover in excess of the limitation fund, the admiralty court must lift the stay, providing that the claimant concedes the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability" and the claimant "file[s] certain protective stipulations to safeguard the shipowner against exposure to liability in excess of the vessel and its cargo if limitation ultimately is found appropriate."  Poling, 776 F. Supp. at 783; see also Dammers, 836 F.2d at 755.

Neither of these exceptions applies in this case.  First, as Ayala concedes, the potential claims exceed the amount for which Bridge seeks to limit liability, namely the value of the tugboat Bruce Russell.  See Ayalas' Answer, ECF No. 15, ¶ 10.

Second, Ayala has not provided stipulations that bring the case within the "lone claimant" exception.  See Dammers, 836 F.2d at 756; Poling, 776 F. Supp. at 783.  Moreover, Ayala has agreed that his claims will be tried in this Court, and he does not seek to return to state court for a judgment in that court.  He simply seeks to have a jury trial on his claim against Bridge.

Accordingly, a concursus is necessary here, but "the question becomes, is there a way to preserve a claimant's right to its common law remedies *within* the concursus?"  Poling, 776 F. Supp. at 783 (emphasis in original).  As Judge Sweet observed in Poling, "courts within and without this circuit have held that where a claim with independent jurisdictional basis normally carrying a jury right is joined with admiralty claims arising out of the same transaction or occurrence, at least the non-admiralty claim may be tried to the jury." Poling, 776 F. Supp. at 783 (collecting cases) (emphasis removed).  In Poling, personal injury and wrongful death claims were filed against vessel owners who subsequently brought a limitation action in admiralty.  See id. at 780.  There, the court empaneled a jury at the beginning of the trial and allowed the trial to proceed on issues pertaining both to limitation and common law claims. Id. at 786.  At the close of evidence, the court determined questions of exoneration and limitation, including any preclusive effect given to their resolution, and submitted the

remaining claims to the jury.  Id.; see also Complaint of Great
Lakes Dredge & Dock Co., 895 F. Supp. 604, 611-12 (S.D.N.Y.
1995) (holding that fact that vessel owners brought limitation
of liability action in admiralty did not deprive wrongful death
claimants of jury trial).

The circumstances in this case counsel a similar approach.
The issues of exoneration and limitation of liability for
Bridge, which must be tried to the Court, will depend on whether
Bridge was negligent and, if so, whether Bridge's owner had
knowledge or privity of those acts.  If there is no limitation
of liability, Ayala will have the right to have the jury
determine the elements of his claims against Bridge and the
amount of his damages.  But that evidence would necessarily
overlap with the evidence of Bridge's negligence, if any, that
is relevant to the limitation of liability issue.  The most
reasonable and efficient process will be to empanel a jury at
the outset of the trial and allow the trial to proceed on issues
pertaining both to limitation and common law claims.  At the
close of evidence, the Court will determine the admiralty
issues, and the jury will determine Ayala's claim against Bridge
to the extent it is allowed by the prior determinations by the
Court.  The Court will also decide any issues all of the parties
have agreed should be decided by the Court.  See In re Leigh,
No. 13cv294 (ADS) (AKT), 2014 WL 1315394, at *6 (E.D.N.Y. Mar.

31, 2014) (citing <u>Hygrade Operators, Inc. v. Clifford</u>, 96cv0065(FM), 2000 WL 174928, at *1 (S.D.N.Y. Feb. 15, 2000); <u>Great Lakes Dredge</u>, 895 F. Supp. at 608; <u>Poling</u>, 776 F. Supp. at 786; <u>Red Star Towing & Transp. Co. v. The "Ming Giant"</u>, 552 F. Supp. 367, 371-72 (S.D.N.Y. 1982)).  <u>But see</u> <u>In re Petition of Atlantis Fishing Fleet Corp.</u>, 2004 WL 3704912, at *4 (E.D.N.Y. Mar. 22, 2014) ("[T]his court finds that under the circumstances of this case, the interest of judicial economy is better served by bifurcating the trial of this matter and, thus, declines to follow the approach set forth by the Southern District in <u>Great Lakes</u> and <u>Poling</u>.").

### III.

For the foregoing reasons, Bridge's motions for summary judgment are **denied**.  Tutor Perini's motions for summary judgment are **denied in part** and **granted in part**.  Ayala's motion for summary judgment is **denied**.

The Court will conduct a bench trial on the issues relating to exoneration and limitation of liability as to Bridge but will empanel a jury at the outset to be available to decide Ayala's claim against Bridge to the extent it is not barred by the Court's prior findings.  The Court will also decide all issues the parties have agreed should be decided by the Court.  The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:**     **New York, New York**
           **October 24, 2015**          _____/s/_____
                                              **John G. Koeltl**
                                   **United States District Judge**