UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

In re

Bridge Construction Services of            12 Civ. 3536 (JGK)
Florida, Inc., Hughes Bros., Inc.,         12 Civ. 6285 (JGK)
and Tutor Perini Corp.,                    13 Civ. 3123 (JGK)

Petitioners.                               MEMORANDUM OPINION AND
                                           ORDER
————————————————————————————

JOHN G. KOELTL, District Judge:

    Before the Court is the application of Tutor Perini Corp.
("Tutor Perini") and Hughes Bros., Inc. ("Hughes") for
attorneys' fees following the Court's decision on the merits.
See In re Bridge Constr. Servs. of Florida, Inc., No. 12-CV-3536
(JGK), 2016 WL 2755877 (S.D.N.Y. May 12, 2016) ("Bridge III").
Bridge Construction Services of Florida, Inc. ("Bridge") objects
to the provision of any attorneys' fees or costs.

    Familiarity with the procedural history and facts of this
case is assumed. See id. at *1-9; see also In re Bridge Const.
Servs. of Florida, Inc., 39 F. Supp. 3d 373, 378-80 (S.D.N.Y.
2014) ("Bridge I").

    In short, the Subcontract Agreement between Tutor Perini
and Bridge, which is governed by New York law, establishes the
liabilities of the parties for indemnification and defense.
Section 11.1 of the Subcontract Agreement establishes what
claims, damages, and expenses are recoverable. It states:

11.1 To the fullest extent permitted by law,
Subcontractor [Bridge] shall indemnify, defend, and
hold harmless Contractor [Tutor Perini], Owner, and
their officers, employees, consultants and agents from
and against all liability, claims, damages, losses,
costs, fines and expenses, (including attorney's fees
and disbursements) caused by, arising out of or
resulting from the performance of the Work or the acts
or omissions of the Subcontractor, its sub-
subcontractors or anyone directly or indirectly
employed by the Subcontractor or any of its sub-
subcontractors or for whose acts the Subcontractor or
any of its sub-subcontractors may be liable; provided
that any such liability, claim, damage, loss, cost, or
expense is caused, in whole or in part, by the
negligent act or omission of the Subcontractor, its
sub-subcontractors or anyone directly or indirectly
employed by any of them or for whose acts any of them
may be liable when the loss, injury or damages arises
out of, relates to, is connected to, or results from
the Subcontractor's work. This required Subcontractor
indemnity specifically does not include
indemnification for the Contractor's own negligence,
except to the extent permitted by law. Such obligation
shall not be construed to negate or otherwise reduce
any other right or obligation or indemnity, which
would otherwise exist.

Subcontract Agreement at 20, ECF Dkt. No. 261-2; see also

In re Bridge Const. Servs. of Florida, Inc., 140 F. Supp.

3d 324, 331 (S.D.N.Y. 2015) ("Bridge II").

Section 11.3 of the Subcontract Agreement is the provision

that triggers when a duty to defend commences:

11.3 The Subcontractor [Bridge] agrees that its
obligation to defend, indemnify and hold harmless
Contractor [Tutor Perini] and other indemnitee(s)
pursuant to the provisions of this Subcontract
commences when a claim is made even if the
Subcontractor disputes its obligation to defend,
indemnify and hold harmless. Should the Subcontractor
fail to promptly assume its duty to defend such a
claim, the Contractor or the indemnitee(s), at its

2

> sole option, may provide for that defense through counsel of its own choosing, at Subcontractor's sole expense. Subcontractor agrees to pay all defense costs so incurred by the Contractor or other indemnitee(s) upon demand.

Subcontract Agreement at 20, ECF Dkt. No. 261-2.

The Court has already found that Bridge has the obligation to reimburse Tutor Perini for the costs that it incurred after Bridge declined to assume the defense of Tutor Perini in the underlying action. See Bridge II, 140 F. Supp. 3d at 335.

Bridge has raised objections to various aspects of the claims for attorneys' fees.

First, Bridge argues that it should not be required to pay the $59,792.69 that Tutor Perini allegedly incurred *before* Jose Ayala, who was injured during the incident at issue, sued Tutor Perini. Section 11.3 of the Subcontract Agreement governs Bridge's duty to defend and specifies when it begins. As the Court held previously: "A fair reading of Section 11.3 makes it plain that Bridge's duty to defend *commences when a claim is made* against Tutor Perini arising out of the acts or omissions of Bridge, 'even if [Bridge] disputes its obligation to defend, indemnify and hold harmless.'" Id. at 335 (quoting the Subcontract Agreement at 20). Bridge II also addresses what the Subcontract Agreement means by "claim": "The term 'claim' is not defined in this context in the Subcontract Agreement, but it is generally understood as '[a] demand for money, property, or a

3

legal remedy to which one asserts a right' or '[a]n interest or remedy recognized at law,' similar to a cause of action." Id. at 334 n.6 (quoting "claim," Black's Law Dictionary (10th ed. 2014)). Until Ayala made a demand for money, property, or a legal remedy, there was no event that required Bridge to indemnify Tutor Perini. Accordingly, Bridge is not required to pay the $59,792.69 that Tutor Perini allegedly incurred before Ayala sued Tutor Perini.

Second, Bridge argues that it should not be required to pay for any attorneys' fees incurred *after* Ayala settled with Tutor Perini. After that time, the only issue for Tutor Perini was the contractual dispute with Bridge over how much each party should pay for the costs of the settlements with Ayala. The Court resolved the question of apportionment after the non-jury trial. See Bridge III, 2016 WL 2755877, at *13-14 (holding that Bridge's negligence caused 40% of Ayala's damages while Tutor Perini's negligence caused 60%).

Bridge argues that pursuant to the interpretation of New York law by the New York Court of Appeals in Hooper Associates, Ltd. v. AGS Computers, Inc., 548 N.E.2d 903 (N.Y. 1989), an indemnification agreement presumptively covers only the costs of defending against the claims of a third party and that the legal fees and disbursements incurred in an intra-party litigation are not recoverable under an indemnity agreement unless it is

"unmistakably" clear from the language of the contract that such defense costs are covered. Id. at 905.

However, Hooper differs in several important respects from this case. As an initial matter, Hooper did not involve any claim by a third party. Instead, the plaintiff in Hooper successfully sued the defendant, who had been hired to build the plaintiff a computer, for breach of contract. Id. at 903-04. The contract contained an indemnification clause whereby the defendant agreed to "indemnify and hold harmless" the plaintiff "from any and all claims, damages, liabilities, costs and expenses, including reasonable counsel fees arising out of" (i) any breach by the defendant of any express or implied warranty or any express representation, (ii) the performance of any service, (iii) the infringement on any patent, copyright, or trademark rights of any person or corporation as a result of any use by the plaintiff, (iv) the installation, operation, and maintenance of the system, or (v) any mechanic's liens. Id. at 903 n.1.

In Hooper, the New York Court of Appeals concluded that the indemnification clause at issue "[did] not contain language clearly permitting plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant. On the contrary, [the indemnification clause was] typical of those which contemplate reimbursement when the indemnitee is required

to pay damages on a third-party claim." Id. at 905. The court
reviewed the areas covered by the clause and concluded: "All
these subjects are susceptible to third-party claims for
failures in the installation or operation of the system. None
are exclusively or unequivocally referable to claims between the
parties themselves or support an inference that defendant
promised to indemnify plaintiff for counsel fees in an action on
the contract." Id.

    Unlike Hooper, the issue in this case is not the attorneys'
fees incurred in a suit for a breach of contract between the
parties to the indemnification agreement where there has been no
third party claim. The dispute involves underlying claims by a
third party, Ayala, against Bridge, Tutor Perini, and Hughes.
After Tutor Perini settled its claims against Ayala, Bridge
maintained its claim for total indemnification against Tutor
Perini, arguing that Tutor Perini and Hughes were solely at
fault for the underlying incident. The Court adjudicated
Bridge's claim in the non-jury trial, where the Court found both
Bridge and Tutor Perini (but not Hughes) at fault for Ayala's
injuries. This case was not, as in Hooper, a simple breach of
contract action between the two parties to a contract that
contained an indemnification agreement that was reasonably
construed only to apply to attorneys' fees in the event of a
third party claim. This case involved a third party claim.

The language in the indemnification clause in this case is also markedly broader than the language in the indemnification clause in Hooper. Here, Bridge agreed to "indemnify, defend, and hold harmless Contractor [Tutor Perini] . . . from and against *all* liability, claims, damages, losses, *costs*, fines and expenses, (*including attorney's fees* and disbursements) caused by, *arising out of or resulting from* the performance of the Work or the acts or *omissions* of the Subcontractor [Bridge]." Subcontract Agreement at 20, ECF Dkt. No. 261-2 (emphasis added). Plainly, Bridge agreed to hold Tutor Perini harmless from the attorneys' fees Tutor Perini incurred "caused by, arising out of or resulting from" the work performed by Bridge, or Bridge's negligence. Indemnification is not limited to a specific list of items, as in Hooper, and cannot be read to be limited solely to the suit by the third party when the apportionment of fault from that third party claim remained to be determined. While the indemnification clause in Hooper was narrow and specific, the indemnification clause here is broad and general.

Other courts have recognized the limited nature of Hooper's holding. For example, in Crossroads ABL LLC v. Canaras Capital Mgmt., LLC, 963 N.Y.S.2d 645 (App. Div. 2013), the court distinguished Hooper, holding that the indemnification clause in Crossroads did not preclude intra-party claims. The

indemnification provision at issue in <u>Crossroads</u> was similar to the clause at issue here. It applied "to 'any and all claims, demands, actions, suits or proceedings,' provided that Crossroads' involvement therein is by reason of its service, etc. to [a defendant]." <u>Id.</u> at 646. The court called this language "extremely broad," noting that the "parties chose to use highly inclusive language in their indemnification provision, which they chose not to limit by listing the types of proceedings for which indemnification would be required." <u>Id.</u> "Therefore, while the rule set forth in <u>Hooper</u> . . . applies in those cases where the parties' intent is not evident from the plain language of the agreement, that is not the case here." <u>Id.</u> Likewise, in this case, the parties' intent is clear---Bridge was required to indemnify Tutor Perini for costs caused by, arising out of or resulting from the acts or omissions of Bridge. This provision covers the attorneys' fees incurred in the apportionment of liability between the parties. <u>See</u> <u>Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.</u>, 418 F.3d 168, 177-78 (2d Cir. 2005) (Sotomayor, J.) (distinguishing <u>Hooper</u> and affirming the award of attorneys' fees where the indemnity clause "swe[pt] broadly, providing for reimbursement of attorney's fees regardless of the nature of the underlying action," including actions between the parties).

Accordingly, Bridge is also required to pay for any attorneys'
fees incurred after Ayala settled with Tutor Perini.

Third, Bridge argues that it is not liable for the
attorneys' fees incurred by Tutor Perini in accepting the
defense of Hughes. Bridge's argument on this issue is
persuasive.

Bridge did not agree to indemnify Tutor Perini for the work
or the omissions of Hughes. Tutor Perini's liability for the
defense of Hughes arises from the indemnification obligation
Tutor Perini undertook in a Bareboat Charter Agreement with
Hughes. Tutor Perini argues, incorrectly, that its Subcontract
Agreement with Bridge included an indemnification of Hughes.
Tutor Perini contends that Section 11.3 requires Bridge to
defend and indemnify Tutor Perini "and other indemnitee(s)
pursuant to the provisions of the Subcontract when a claim is
made . . . ." Subcontract Agreement at 20, ECF Dkt. No. 261-2.
But the "indemnitees" referred to in that clause are plainly the
indemnitees referred to in Section 11.1. They are Tutor Perini,
and the "Owner, and their officers, employees, consultants and
agents." Id. The Subcontract Agreements creates no obligation by
Bridge to indemnify Hughes, and Tutor Perini cannot bootstrap
Bridge's obligation to indemnify Tutor Perini and the
"indemnitee(s)" in the Subcontract Agreement into an obligation
to indemnify Hughes.

Nevertheless, there are not many expenses that could reasonably have been incurred solely for Hughes. Tutor Perini was liable for the upkeep of the barge after it had chartered it. Hughes could only have been liable for the condition of the barge at the time it was chartered. <u>See</u> Hughes-Tutor Perini Bareboat Charter Party Agreement at 17, ECF Dkt. No. 261-4 ("Charterer [Tutor Perini] hereby agrees to indemnify, hold harmless and defend Vessel, Owner [Hughes] and Owner's Agent against any claim, demand or damage of whatsoever nature arising out of Charterer's use, operation and/or maintenance of the Vessel and against any claim or demand of any third party . . . ."). The lack of reasonable attorneys' fees expended in defending Hughes is reflected by the fact that Hughes was found to have no liability at all at trial. <u>See</u> <u>Bridge III</u>, 2016 WL 2755877, at *12 ("While there is no credible evidence of negligence on the part of Hughes, there is ample evidence of negligence on the part of Tutor Perini.").

But some means must be found to apportion fairly the attorneys' fees expended in the defense of Hughes. Tutor Perini submitted a hearsay affidavit from its lawyer recounting the work of a paralegal that attempted to calculate the amount of the attorneys' fees devoted to Hughes. But Bridge correctly points out that this affidavit was submitted after trial and without the benefit of cross-examination.

It is common for courts to segregate attorneys' fees spent on claims or expenses that are not compensable. See, e.g., Yurman Design, Inc. v. PAJ, Inc., 29 F. App'x 46, 48-49 (2d Cir. 2002) (summary order); VIDIVIXI, LLC v. Grattan, No. 15-cv-7364 (JGK), 2016 WL 4367972, at *5 (S.D.N.Y. Aug. 13, 2016); Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 58 (S.D.N.Y. 2015). Likewise, the Court of Appeals has allowed gross approximations. See, e.g., Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172-73 (2d Cir. 1998); De La Paz v. Rubin & Rothman, LLC, No. 11-cv-9625 (ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013) (citing McDonald ex rel. Prendergast v. Pension Plan of the NYSA—ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006)).

In this case, Bridge argues that it has not had the opportunity for cross-examination of the relevant billing information. Accordingly, the Court will hold another hearing at which Tutor Perini can present evidence related to an approximation of the attorneys' fees devoted to the defense of Hughes that should be deducted from its request for attorneys' fees. Tutor Perini should provide the exhibits in advance to Bridge.

Fourth, Bridge argues that the fees should be reduced by 60% because otherwise it would have to pay for Tutor Perini's negligence. This argument is without merit. Tutor Perini was

sued and Bridge had the obligation to defend Tutor Perini irrespective of Tutor Perini's fault. See Bridge II, 140 F. Supp. 3d at 335 ("The obligation [of Bridge] to pay the defense costs does not depend on an ultimate finding of fault by Bridge, and the decision whether to provide a defense is necessarily made before any finding of fault has been made."). If Bridge had defended Tutor Perini, Bridge would have paid the whole cost of the defense. Bridge should not now be in a better position because it required Tutor Perini to defend itself. Indeed, the Subcontract was clear. If Bridge did not defend Tutor Perini and Tutor Perini hired its own counsel, those costs were to be at Bridge's "sole expense" and Bridge agreed "to pay all defense costs so incurred" by Tutor Perini. Subcontract Agreement at 20, ECF Dkt. No. 261-2.

Fifth, and finally, is the issue of interest. Interest should accrue at the rate of 9% under New York law and, pursuant to the New York Civil Practice Law and Rules, it should be calculated from the midpoint of the expenses. See C.P.L.R. § 5001(b); see also Order, May 31, 2016, ECF Dkt. No. 256.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit.

Tutor Perini should provide Bridge and the Court with a detailed explanation for the apportionment of its attorneys' fees and costs devoted to the defense of Hughes by **September 15, 2016**. The Court will hold an evidentiary hearing on **September 22, 2016 at 3:00 P.M.**


**SO ORDERED.**

**Dated:**    **New York, New York**
          **September 5, 2016**     _____/s/_____
                                         **John G. Koeltl**
                              **United States District Judge**

13